The case involves a straightforward traffic stop in which Cody Jansen, the trooper with the vehicle for driving 65 mph in a 55 mph construction zone. He issued a warning ticket for that violation. Mr. Mulbah brought a Fourth Amendment claim contending three things. One is that there was no basis for the stop in the first place. Two, that the stop was unlawfully extended by questions that Trooper Jansen asked unrelated to the traffic violation. And thirdly, that there was no basis for the stop in the first place. No consent to a search that Trooper Jansen conducted of Mr. Mulbah's vehicle for distribution-sized quantities of illegal drugs. The district court granted summary judgment on the consent question and on the unlawful extension of the stop under Rodriguez, but denied summary judgment based on qualified immunity on the first question, which is the basis for the stop. Let's say that the jury concluded that your client was lying and that he never did use the radar, and they believe the plaintiff when he claims that he was going the speed limit. Would that make out a claim then? Your Honor, that presents a genuine issue of disputed fact, but not a material issue of disputed fact. The question there is whether Mr. Mulbah was in fact speeding, which under Garcia this Court has said is not material to the question of qualified immunity, which depends upon the facts known to the officer at the time. My assumption is, on my assumption, the officer knew that he didn't use the radar. Sure. That the radar said 55. But there are no facts in the record, Your Honor, suggesting that. The district court... It's a simple denial, I think presented in three forms, like I didn't speed, I don't speed, and I checked Google to make sure I wasn't speeding. But essentially he's saying I didn't speed. Correct, he is. And that creates a disputed fact whether he was in fact speeding. But does it also create a disputed fact about whether your client is telling the truth? Well, I think under Johnson v. Crooks, Your Honor, it does not create a material issue of fact about the question whether Trooper Johnson had reasonable cause, probable cause or reasonable suspicion. We've argued that we met the probable cause standard based on two cases from this Court, Fuhrer and Coney, to stop the vehicle based on the use of the radar. Certainly if he used the radar, we've got solid authority that if he had a reading on there that showed speeding, that he's in the clear. But the concern is here the district judge, as I recall, said there's a factual dispute and the jury might find that the trooper was lying. And as I understand the law in a qualified immunity appeal, we have to take that as a given, don't we? Not if the dispute is not material, Your Honor, and that's a legal question that's properly before the court. But why wouldn't it be material if the trooper had no basis to stop the person? Because the only reason that there's a question of fact is based on the denial by Mr. Melba. Maybe the judge was wrong to say that that is enough, but it's not reviewable in a qualified immunity appeal. The denial occurs after the stop. And the qualified immunity standard says the reasonableness of Trooper Johnson's conduct has to be determined based on the facts known to the officer at the time of the stop. So what the district court's analysis essentially did is create a presumption that the officer is lying. And that's... Did the district court make a credibility determination? No. I mean, it came fairly close by saying, you know, what the officer doesn't acknowledge is his entire case is based on his own work. And that seemed to call into question the fact that that was sufficient, the officer's testimony. The suggestion was, you know, there's no videotape, there's no additional evidence. So I felt at some point it came close to a credibility determination. Well, the court said that there's a credibility question, but did so without any facts related to Trooper Johnson's credibility other than Mr. Melba's denial. And, again, that's after the fact. One of the issues that I have is that the standard in the qualified immunity context is that the nonmoving party must offer sufficient probative evidence from which a jury could draw a reasonable inference that Trooper Johnson was, in fact, lying. And there is no such evidence other than the statement that I wasn't speeding. And, again, because that is after the fact, it does not create a material issue of fact related to qualified immunity and the reasonableness of the officer's conduct at the time he stops. And it goes to the whole second prong of the qualified immunity analysis as well, which is whether the right at issue is clearly established. And the position that the district court's decision puts us in is that an officer who relies on radar, who tested the radar before the stop, who tested the radar after the stop, who tested the radar at the end of the day, who's proficient in the use of radar, would know that he or she is violating clearly established law by relying on the radar reading to stop a motorist for speeding. There are no cases in this circuit establishing that. It's not really the plaintiff's argument, though. The plaintiff's argument is he didn't do any of that. He didn't do any of that. And the district judge says a jury could find that. But there's no, Your Honor, the only evidence of that, again, is the simple statement that I wasn't speeding, which is not a fact. It's very thin. You might say it's very thin. Let's put it that way. You might say it's very thin. But we've got this qualified immunity law that says if the district judge says or assumes that a jury could make that finding, that it's not a reviewable matter, don't we? Well, it's clear with that line of cases. Yes, absolutely. Evidence sufficiency questions. But two things, Your Honor. The dispute here is not whether there's a genuine issue of material fact, a genuine dispute of fact. The question is whether there's a material issue of fact. And this Court said in Watson v. Boyd, which was just decided in 2021, that whether issues are material is a legal question appropriate for appellate review in the context of a denial of qualified immunity. I don't think there's any question that under Watson v. Boyd that issue is clearly decided, that you do have jurisdiction to consider whether the dispute that the district court found is material for purposes of qualified immunity. But you keep talking, though, that the dispute is about whether a reasonable officer with a radar reading can make a traffic stop. The district judge said the dispute is whether this trooper used the radar at all. That's the factual dispute. I agree. My point is that the law says that the officer may rely on the radar to make the stop. Yeah. And if you judge the – Go ahead. If you judge the officer's – We should ask each other because you keep saying that he can use the radar, and my concern is whether the judge said a jury could find that he didn't use the radar. So I'll stop. Go ahead. Well, I think the judge did say that. And the reason that I think it's wrong is, one, it's based on conduct after the stop that's not known to the officer at the time. Two, there's no evidence in the record that would support that inference in the context of the qualified immunity analysis. It's not an argument that Mr. Moba made to the district court. It's an argument that the district court advanced. And it stands out from the other facts that the district court hypothesized, that the radar wasn't working correctly, that the radar focused or locked on to another vehicle, or that Trooper Janssen lied about using the radar. And there's simply nothing in the record that would permit a reasonable inference that Trooper Janssen lied about that. Mr. Moba did not advance that argument, and it's not supported by any facts. The other two- As a practical matter, what is she looking for? Is there some sort of documentation that would normally come with a radar? There's nothing in the record to suggest that, Your Honor. The standard seems to suggest that there should be some sort of objective evidence that the radar was used, which would require an officer to make some recording related to the use of the radar. And there's nothing in the record that suggests that that standard procedure, that it's commonly done. There aren't cases discussing that as part of this analysis. What's the case you found that's closest to the sort of he said, he said, you know, contradicting each other on-  Johnson v. Crooks. And I think at the end of the day, you have to harmonize the Johnson decision and the Garcia decision on which the district court relied. I think Garcia is distinguishable for a number of reasons, all of which we argued in the brief. But at the end of the day, Garcia is a different case. And it turned on the question of fact that in part was created by the officer himself in trying to rely on video that the court ultimately reviewed and said wasn't very helpful. I think that exacerbated the issue of there being a question of fact there. But the Garcia court in footnote five also distinguishes, excuse me, footnote three to that opinion, distinguishes Johnson v. Crooks. And it does so by saying that the dispute was not material in the Johnson case because it involved a straightforward traffic stop and did not extend beyond the stop, the investigation, the issuance of the warning ticket, which is essentially the same thing we have here. The court found that there was no unlawful extension of this stop. And the consensual search, the search that occurred was in fact consensual. So I think this case is all for us with Johnson v. Crooks. And that case establishes that the dispute, he said, she said, is not material for purposes of qualified immunity. You also take the question of clearly established law. And, again, there is clearly no robust consensus of persuasive authority here that would have alerted Trooper Johnson to the understanding that he was violating the Constitution by relying on his radar to stop the vehicle. And I'm going to save the rest of my time for rebuttal. Thank you. Thank you for your argument. Mr. Heideprim, we'll hear from you.  This is Pete Heideprim on behalf of Mr. Sheck Mulba. This is a case about conflicting testimony regarding a fact that is central to a claim brought by my client, Mr. Sheck Mulba. The district court held that Mr. Mulba presented sufficient evidence to create a genuine dispute as to the material fact of the proper and accurate recording of Mr. Mulba's feed and of the related question of whether Trooper Johnson had an objectively reasonable belief that Mr. Mulba committed a speeding violation. So the struggle I have with this, I think it's a tough case, is, I mean, it seems to be odd that every time a plaintiff here, and I'm not saying every time, but in this case, the plaintiff simply says, I didn't do it. And that is sufficient to create, to avoid qualified immunity. I mean, let me ask you this. What would the officer have had to introduce to overcome the current just disagreement on he said, she said? Would video have done it? Would a second officer have done it, you know, second officer's testimony? In other words, are we setting some sort of threshold here that says, look, one officer's testimony in the context of a denial is not enough, but two might be, or, you know, something else might be? Yes, Your Honor. And actually that points to just how factual in nature this question is. That gets to the jurisdictional issue, which I'll get to in a moment, but I do want to flag that. But absolutely, I think there are options. For instance, there was video of various parts of this stop. There is nothing that would prevent a trooper from making a recording on his radar and having the video capture what numbers appear on the radar or anything like that. It's not going to prevent that, but you're saying you think the rule of law should be that they must start to do that, I guess. Well, and I do want to insist, Your Honor, that this is highly fact-dependent. So, for instance, if, and there are cases that Stanford's proposition, if it is a bald denial with absolutely no supporting evidence, just nothing beyond the fact of, oh, I don't think I was speeding. This is pretty close to a bald denial. I mean, it's phrased in a couple different ways, but it's basically I wasn't speeding, I'm not a speeding type of guy, if I remember, and Google, I was watching Google, so I didn't speed. Well, Your Honor, respectfully, the testimony of Mr. Mulva was without question that he specifically recalled following posted speed limit signs. He specifically recalled cars passing him because he was driving slowly. Didn't he also put on Instagram or something that he was going 65? He did post that, but that, as he testified, was a typo and was actually the night of the stop, which, for him, he also testified was a traumatic event. It forced him to break down into tears later that night or shortly thereafter. And what's critical, also, is that in light of that fact, which is in the record, the district court still determined that there was enough factual evidence to at least put this in a genuine dispute. And that speaks to the fact that he was driving. Alito What if we think that's wrong? Do we have jurisdiction to say that it's an unreasonable inference? Well, Your Honor, the district court did not ground its, the district court grounded its reasonable inferences that opposing counsel went into about whether the radar locked on the right vehicle on a variety of evidence in the record. It didn't hinge on, at least I don't think that the typo would be the straw that breaks the camel's back in that sense, because I think there was factual support. Alito So what was the factual support that the district court based those inferences on? Wasn't it just your client's testimony? It was the testimony based on his recollection and his specific recollection of the night in question. And that's the, and that exactly was presented right next to the testimony, not any objective evidence, the testimony of the trooper who conducted the stop. And really this, this focus on the fact you seem to be arguing for a rule of law here that's going to mean whenever a speeder says, I wasn't speeding and I'm sure of it, and the trooper says, well, I clocked him on radar, speeding, that case goes to trial to decide whether the trooper is telling the truth. Is that the rule of law that you're proposing? And if so, is that a prudent one? Well, Your Honor, I think actually the harmonization of Johnson v. Crooks and Garcia that opposing counsel mentioned is the answer to this, and, but it provides a different answer than opposing counsel suggests, because Johnson v. Crooks carves out this sort of de minimis intrusion where in, in an overall Fourth Amendment reasonableness question, it makes sense to say we don't need to have a jury trial on just bald denial of a traffic violation and a conflicting testimony matter. But in footnote 3 of Garcia, it specifically distinguishes cases where it's not just, do you know why I pulled you over? Are you awake? Are you functioning okay because you crossed the center line? I don't understand that distinction at all. What's that got to do with whether it was a lawful stop? Well, well, as, as described in footnote 3 of Garcia, the, it becomes material whether there was a traffic violation when it is not a Johnson v. Crooks minimal intrusion under the reasonableness of the Fourth Amendment. And so when you have, and there's a Seventh Circuit case cited in, in the footnote 3 of Garcia that has very similar facts to our case here, this is Huff v. Reichert, and it involves a driver pulled over for a traffic violation, pulled out of the vehicle, questions about drug trafficking, crime in general that don't relate to the traffic violation, just like this case. And Garcia specifically pointed out that that is not a Johnson v. Crooks matter, which distinguishes this from a Johnson v. Crooks situation. And, and really all this focus on the facts highlights the important point that this Court's specific interlocutory jurisdiction limits the Court's analysis to, to legal questions. And as we go back and forth on the facts, it's clear that there is a fact question at the heart of the arguments here, which is from Thompson v. Dill, a quote in, from this Court in 2019 at page 1012. And so what, what's critical to remember is that this district court found that there was sufficient evidence to, to put this to a jury trial, and all there was, was testimony on one side and testimony on the other. And, and really what, what's, what's also important is the recent Eighth Circuit case of Taylor v. St. Louis Community College. And before you get to Taylor, what was the case you were talking about right before that, Thompson? Thompson v. Dill. You said the, the Court said there was enough to go to jury on, on what facts? I, I'm sorry, Your Honor. It was that jurisdiction is thus typically lacking where there is a dispute of fact at the heart of the argument. It, it was a, it was an argument related to this Court's limited interlocutory jurisdiction. You mean this Johnson v. Jones type case? Yes, Your Honor. And so, and then Taylor. And you're saying this is a Johnson v. Jones case here, this case? I, I think it's instructive in the sense that the specific nature of the interlocutory jurisdiction here limits the analytical focus of the Court, and it, it can't get into whether there was a stronger testimonial weight on one side or the other, because the district court specifically in applying the summary judgment standard, that it wasn't going to get into the testimony. And, and Taylor v. St. Louis Community College provides a list of cases at the end of that decision clearly indicating that on an interlocutory appeal, this Court is not going to conduct its own granular review of the facts, because that, under our system, is what the district court does when it's analyzing whether summary judgment is proper under, under qualified immunity. And even if the Court does reach the merits of, of the initiation of the stop question, it, it really is not a workable principle to say that the only facts that matter are the facts, is the officer's statement, the officer's assertion, no objective evidence that there was speeding, because there's really no limiting principle for that sort of claim, because then even if, for instance, a vehicle was driving that had a motor that couldn't go over 55 miles an hour, if the trooper says, well, I used my radar, and that vehicle gets pulled over for exceeding 55 miles per hour, there is absolutely no claim. And so there's no really workable limiting principle. You developed a theory that the trooper was lying about this. Your counterpart says you never argued that in the district court. Is that true, that your theory was something different, maybe that the trooper made a mistake, or what was your theory of the case? Well, our theory was that there was a dispute of fact about the proper and accurate recording of Mr. Mulder's speed. Our, our position has been... Your theory was maybe the radar gun registered an incorrect speed? Under the assumption that he used a radar gun. And I, I don't think, I don't think we allege the specific theory that... He lied. That there was some deception. But... Isn't that a problem? I mean, your theory is the radar gun was wrong. And under that theory, maybe the trooper is entitled to qualified immunity. But then the district judge comes up with a theory that maybe he made the whole thing up. Well... Maybe the trooper made up the whole radar use. Well, Your Honor, for that to apply, Trooper Janssen would have needed to allege some, or would have needed to argue some sort of mistake of fact argument. But he has never asserted any sort of mistake. He has said it, the vehicle was speeding and I recorded it. And so, it, the, the point really is that there needs to be some evidence aside from the assertion from the officer. Because if there is, if the assertion of the officer is enough to defeat the initiation of the stop, Fourth Amendment claim, that creates some exception to the summary judgment standard where it's okay to weigh that testimony against... Well, I mean, you wouldn't necessarily say that. But you'd have to say there'd be, have to be a material dispute about his reasonable knowledge at the time. And, and you could say, for example, that, that the plaintiff's suggestion that I wasn't speeding isn't sufficient. But if you had a case, for example, where you brought in information that said, hey, this, this thing won't go over 45 miles an hour. Or you brought in a third party who was videotaping, who shows that the car was just creeping along the side. Then you could undermine the officer's testimony. But the struggle for me is simply having a plaintiff coming in and saying, I didn't do it, is potentially problematic. Well, and, and I do want to be clear, Your Honor, that, that Trooper Jansen's position is that none of those facts matter. That whether the engine can drive a certain speed, whether there's a recording from a third party, Trooper Jansen's position is that only what the officer says is material. But this is, and this gets into footnote three of Garcia. And trying to align that with the Johnson v. Crooks decision, where, where there was, there is sort of a Johnson v. Crooks minimal intrusion, and there is a different sort of intrusion where it is material about whether the traffic violation occurred. I don't understand that. I mean, if the Trooper really made it up, why is Johnson, why isn't it, why is a minimal intrusion acceptable? You can't just make up a radar claim and then pull somebody over and say, what was a minimal intrusion? Johnson v. Crooks must be about more than that. Well, and, and it might, and again, this gets into how fact-dependent this is, it might depend on the nature of the traffic violation. Because the traffic violation, if I, memory serves me in Johnson v. Crooks, was crossing over the center lane, which is something readily apparent to someone, an officer. But when you involve technology, that, that could be a different matter. Because, because by seeing a car just drive on the road, and this isn't in the factual record, the Trooper did not say, oh, I just know that, that, that vehicle, specifically driven by Mr. Mulva, was exceeding the speed limit. And, and... The theory in the district court was that the Trooper used the radar, but the reading was unreliable. Is that what you said? I think that's what you said earlier, but I just wanted to confirm that. We, I, we did not, Your Honor, specifically claim there was deception involved. But it was that the proper and accurate recording of the speed is a genuinely disputed fact. So, and that could be whether it locked onto a different vehicle, whether it malfunctioned, or, or, or something else. And I do want to, before closing up, emphasize the fact that this brand-new argument about whether the right at issue is clearly established is not something that was argued below. In fact, all the citations that, that Trooper Jansen provides are to sort of generalize statements about qualified immunity. And under that idea, if you cite Rule 56, then all of your summary judgment arguments are preserved. But that's not really how this works, because the Court specifically relied on the fact that this was not disputed below, whether the right was clearly established. And the Court was indicating its willingness to grapple with this issue if there was an argument on the other side, but there wasn't. And the district court came to the correct conclusion as well that the right was clearly established. For those reasons, Your Honors, we ask that the appeal be dismissed or that it be rejected on the merits and the order below be affirmed. Thank you. Very well. Thank you for your argument. Okay. We'll hear rebuttal. Mr. Thank you, Your Honor. You may proceed. Johnson v. Crooks is a crossing the line case. And if you read Judge Lay's dissent, you'll discover an argument very similar to the argument that Mr. Heidepperm has made in this case that the Court rejected in Johnson v. Crooks. I look at Johnson v. Crooks, and you've got an officer who said she crossed the line a couple of times, and I stopped her. She says, I didn't cross the line. You stopped me because I'm black and I'm driving a fancy new car. That's the evidence in Johnson v. Crooks. The evidence in this case is the officer relies on his radar. And the only claim is after the fact, I wasn't speeding. Not that the radar was wrong. Not that there's evidence the radar was unreliable. Not that there's evidence the officer was lying. Simply, I wasn't speeding. That's not enough. This case is stronger than Johnson v. Crooks, but on all fours with Johnson v. Crooks. Judge Colleton, you mentioned whether Mr. Moeba is essentially advocating for a new rule of law with respect to prophylactic measures that officers should take to record speed readings. I think that, in fact, is the case. And it goes to the clearly established law prong, and please don't forget that as part of the analysis in this case. If you look at the district court's decision toward the end, when the district court is talking about the third claim, which is not at issue here because the court granted summary judgment based on qualified immunity with respect to the consent of the search. But if you look at the district court's analysis of clearly established law, in the opinion, it is perfectly inconsistent with the district court's analysis of whether there was reasonable cause for the stop in the first place. The district court said that Moeba fails to demonstrate that his allegedly violated right is a clearly established one. Instead of laying out how his allegedly violated right is clearly established, Moeba argues only that his right was violated. He does not point to when the court is unaware of any case directly on point, nor does Moeba argue the existing precedent places the question beyond debate. Those arguments were made to the district court with respect to all three facets of the Fourth Amendment claim here. The district court got the analysis right with respect to the consent. On clearly established law, for some reason, that did not carry over to whether there was reasonable cause for the stop in the first place. But I think under established precedent in this court and elsewhere, there's certainly persuasive authority that Trooper Jansen reasonably relied on his radar in making the stop, and that's sufficient to entitle him to qualified immunity. Thank you. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted. The court will file a decision in due course. That concludes the argument session for this afternoon. The court will be in recess until tomorrow.